UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

**TRAIL MARINE LLC**            **CASE NO. 6:22-CV-02050**

**VERSUS**            **JUDGE DAVID C. JOSEPH**

**TEXAS PETROLEUM INVESTMENT CO**            **MAGISTRATE JUDGE CAROL B. WHITEHURST**

### REPORT AND RECOMMENDATION

Before the Court is the Motion to Dismiss pursuant F.R.C.P. Rule 12(b)(6) filed by Defendant, Texas Petroleum Investment Company ("TPIC"). (Rec. Doc. 7). Plaintiff, Trail Marine, LLC opposed the Motion (Rec. Doc. 9), and TPIC replied (Rec. Doc. 12). The Motion was referred to the undersigned magistrate judge for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of this Court. Considering the evidence, the law, and the arguments of the parties, and for the reasons explained below, the Court recommends that TPIC's Motion be granted in part and denied in part.

### Factual Background

Trail Marine filed this admiralty and maritime claim in July 2022 for the loss of its commercial vessel, the *TM-3*. Trail Marine alleges that, pursuant to a bareboat charter agreement, Trail Marine chartered the *TM-3* to TPIC in January 2015. According to the terms of the charter agreement, TPIC agreed to insure the

*TM-3* and to return it in good condition upon completion of the contract. (Rec. Doc. 1, ¶VII; XI). Trail Marine alleges that the *TM-3* was severely damaged on October 15, 2015 while chartered to TPIC, that it was later salvaged by a third party, and that the vessel was a total loss. (Rec. Doc. 1, ¶XIII). Trail Marine filed this suit to recover for the loss of the *TM-3* due to TPIC's failure to insure the vessel, failure to return it in good condition, and for breach of contract damages. (Rec. Doc. 1, ¶XIV-XXIII).

TPIC filed the instant motion to dismiss Trail Marine's complaint on the grounds that Trail Marine's claims are precluded by its failure to file a compulsory claim in either of two limitation actions filed in 2016 as a result of the incident. TPIC filed the first limitation of liability action pursuant to 46 U.S.C. §30501 *et seq* and Rule F of the Supplemental Rules for Admiralty and Maritime Claims in March 2016. (*In Re: Texas Petroleum Investment Co.,* 2:16-CV-00355 ("*In Re: TPIC*"). In that action, TPIC described the October 2015 incident involving the *TM-3* as an explosion in which two workers were killed and the vessel was destroyed. (*In Re: TPIC*, Doc. 1). On May 24, 2016, the court in *In Re: TPIC* ordered that a Monition be issued to all persons claiming damages for any and all losses, destruction, damage, injury or death resulting from the incident, and that

such persons file their claims by July 1, 2016.[1] (*In Re: TPIC*, Doc. 4). Trail Yamaha Service Center, LLC,[2] against whom one decedent's family had filed suit in state court, filed an answer to TPIC's limitation action seeking to limit claims against it arising out of the incident. (*In Re: TPIC*, Doc. 8). In July 2016, TPIC moved for default judgment against those parties who had not asserted claims. On July 27, 2016, the court entered the following default judgment:

> HEREBY ORDERS, ADJUDGES, AND DECRESS: any and all parties that did not enter a claim in Texas Petroleum Investment Company's limitation proceeding as docketed above, is hereby in default and enjoined from entering a claim against Texas Petroleum Investment Company arising out of or in connection with the alleged incident that took place on or about October 15, 2015 at Texas Petroleum Investment Company's White Lake facility in Louisiana.

(*In Re: TPIC*, Doc. 30).

Trail Marine did not file a claim in *In Re: TPIC*. Instead, on September 13, 2016, Trail Marine filed a subsequent limitation of liability action. (*In Re: Trail Marine, LLC*, 2:16-CV-01282). The two limitation actions were consolidated into *In Re: TPIC*, and TPIC filed a claim for contribution and indemnity in Trail Marine's action. (*In Re: TPIC*, Doc. 54; 58). Trail Marine did not answer TPIC's claim or file a counterclaim against it; however, Trail Marine stated in the parties'

---

[1] The decedent parties were given additional time to file claims.
[2] TPIC submits that Trail Yamaha is affiliated with Trail Marine, but the records in these cases does not evidence the affiliation.

3

Rule 26(f) report that it reserved the right to assert third-party demands against insurers that were obligated to name it as additional insured pursuant to its charter agreement with TPIC and, alternatively, against TPIC for breach of contract if Trail Marine was not named as additional insured. (*In Re: TPIC*. Doc. 108). Trail Marine never moved to assert such claims against TPIC or any of its insurers. TPIC now urges the Court to dismiss Trail Marine's claims for failing to assert its claims in either of the two limitation actions. Trail Marine contends that the personal contract doctrine allows it to proceed against TPIC outside the limitation proceedings.

## Law and Analysis

### I. Law applicable to Rule 12(b)(6) and documents considered.

When considering a motion to dismiss for failure to state a claim under F.R.C.P. Rule 12(b)(6), the court must limit itself to the contents of the pleadings, including any attachments and exhibits thereto. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir.2000); *U.S. ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 375 (5th Cir.2004). The court must accept all well-pleaded facts as true and view them in the light most favorable to the plaintiff. *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir.2007) (internal quotations omitted) (quoting *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir.2004)); *Baker v. Putnal*, 75 F.3d 190, 196 (5th

4

Cir.1996). Conclusory allegations and unwarranted deductions of fact are not accepted as true, *Kaiser Aluminum & Chemical Sales v. Avondale Shipyards*, 677 F.2d 1045, 1050 (5th Cir. 1982) (citing *Associated Builders, Inc. v. Alabama Power Company*, 505 F.2d 97, 100 (5th Cir. 1974)); *Collins v. Morgan Stanley*, 224 F.3d at 498. To survive a Rule 12(b)(6) motion, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic*, 127 U.S. at 570. The allegations must be sufficient "to raise a right to relief above the speculative level," and "the pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Id.* at 555 (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-36 (3d ed. 2004)).

Ordinarily, in ruling on a Rule 12(b)(6) motion, the Court is limited to the allegations of the complaint and any exhibits attached thereto; however, the court may also consider documents attached to the defendant's motion if they are referenced in the complaint and central to the plaintiff's claims. *In re Katrina Canal Breaches Litig.,* 495 F.3d 191, 205 (5th Cir. 2007). The Court is also permitted to take judicial notice of public records as well as facts which are not subject to reasonable dispute in that they are either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be

questioned. *Funk v. Stryker Corp.,* 631 F.3d 777, 783 (5th Cir. 2011). In addition to consideration of the Complaint and the charter agreement attached thereto, the Court shall take judicial notice of the *In Re: TPIC* and *In Re: Trail Marine* proceedings as matters of public record.

## II.     Whether Trail Marine's claims are precluded.

TPIC first seeks to dismiss Trail Marine's claims as precluded under the doctrine of *res judicata*. The Fifth Circuit explained claim preclusion as follows:

> The rule of res judicata encompasses two separate but linked preclusive doctrines: (1) true res judicata or claim preclusion and (2) collateral estoppel or issue preclusion. … Claim preclusion bars the litigation of claims that have been or should have been raised in an earlier suit. The test for claim preclusion has four elements: (1) the parties are identical or in privity; (2) the judgment in the prior action was rendered by a court of competent jurisdiction; (3) the prior action was concluded by a final judgment on the merits; and (4) the same claim or cause of action was involved in both actions.

*Students for Fair Admissions, Inc. v. Univ. of Texas at Austin*, 37 F.4th 1078, 1087 (5th Cir. 2022) (cleaned up).

It is undisputed that 1) the parties, Trail Marine and TPIC, are identical in this case and in the limitation actions; and that 2) the prior judgment of default was rendered by a court of competent jurisdiction. Trail Marine disputes that the default judgment applies to Trail Marine's claims because its claims arise from a personal contract, which Trail Marine contends are not subject to limitation under the personal contract doctrine. Trail Marine further argues its claims for breach of the

6

charter agreement do not arise out of the same transaction or occurrence as the claims required to have been brought in the limitation proceedings.

### A. Whether the personal contract doctrine applies to excuse Trail Marine's claims from the limitation proceedings.

Trail Marine first relies on the personal contract doctrine for the proposition that its claims against TPIC arise out of a personal contract and are thus legally excused from compulsory claims in limitation proceedings. The analysis begins with the Limitation of Liability Act, which provides that "the liability of the owner of a vessel for any claim, debt, or liability … arising from … any act, matter, or thing, loss, damage, or forfeiture, done, occasioned, or incurred, without the privity or knowledge of the owner … shall not exceed the value of the vessel and pending freight." 46 U.S.C. § 30505(a)-(b); *SCF Waxler Marine, L.L.C. v. Aris T M/V*, 24 F.4th 458, 472 (5th Cir. 2022). In cases involving a bareboat charter agreement, the charterer assumes complete and exclusive possession, command, and navigation of the vessel, such that the charterer is considered an owner *pro hac vice* entitled to seek limitation of liability. *Torch, Inc. v. Alesich*, 148 F.3d 424, 426 (5th Cir. 1998).

The personal contract doctrine is an exception to the foregoing limitation ordinarily available to owners. The doctrine began with a statement by the Supreme Court over a century ago:

> Thus construed, the [limitation of liability statute] harmonizes with the policy of limiting the owner's risk to his interest in the ship in respect of all claims arising out of the conduct of the master and crew, whether the liability be strictly maritime or from a tort nonmaritime, but leaves him liable for his own fault, neglect, and contracts.

*Richardson v. Harmon*, 222 U.S. 96, 107, 32 S.Ct. 27, 30, 56 L.Ed. 110 (1911).

In the jurisprudence interpreting *Richardson*, it seems clear that *Richardson's* emphasis was on the owner's personal fault—not the distinction of the claims as in tort or contract. In *Signal Oil*, the court explained:

> The cryptic reference in *Richardson* to the vessel owner's inability to limit liability for his own fault, neglect, and contracts, rather than those of his captain and crew, does not offer much guidance. This language could have been read to mean that limitation was available only against tort claims that such a contractual undertaking by a vessel owner as with a shipper, for example, was not subject to the statute despite satisfaction of the stated requirements for limitation. As noted by G. Gilmore & C. Black, *The Law of Admiralty* s 10-26, at 899 (2d ed. 1975) (hereinafter Gilmore & Black), subsequent cases have rendered such a reading of the doctrine improper.

*Signal Oil & Gas Co. v. Barge W-701*, 654 F.2d 1164, 1168–69 (5th Cir. 1981) *certiorari denied* 102 S.Ct. 1440, 455 U.S. 944, 71 L.Ed.2d 656, *certiorari denied* 102 S.Ct. 1441, 455 U.S. 944, 71 L.Ed.2d 656.

Thus evolved the personal contract doctrine. See also *Coryell v. Phipps*, 317 U.S. 406, 410, 63 S. Ct. 291, 293, 87 L. Ed. 363 (1943) ("The limitations acts have long been held not to apply where the liability of the owner rests on his personal contract.) "Properly invoked, this doctrine deprives a shipowner of the benefits of

8

limitation and exposes him to the full burden of liability his actions produced." *Signal Oil,* 654 F.3d at 1168. "In application this is an equitable doctrine based on the proposition that a shipowner should not be able to promise an undertaking or performance that was within his personal control and then turn around and limit liability when his performance was faulty." *Trico Marine Assets, Inc. v. Diamond B Marine Servs., Inc.,* No. 99-0951, 2001 WL 946362, at *3 (E.D. La. Aug. 21, 2001) citing 2 Schoenbaum § 15-8, at 318.

Rather than analyzing the type of contract at issue, "the test of the personal contract exception is ... whether the obligation (and therefore the breach) was one the shipowner was personally bound to perform, rather than one contemplated he would delegate to his agents and servants." *Id.;* See also *In Matter of Complaint of B & J Martin, Inc.*, No. CIV. A. 93-1304, 1995 WL 562298, at *1–2 (E.D. La. Sept. 20, 1995), citing *The Soerstad*, 257 F. 130 (S.D.N.Y.1919) ("Judge Learned Hand allowed a tug owner to limit liability on the theory that the doctrine as developed by the Supreme Court denied limitation not only when the contract but the resulting breach was personal.")  As noted by the court in *Signal Oil,*

> "It is by no means clear exactly what a 'personal contract' is, but it is clear that not all contracts are 'personal', even though entered into personally by the shipowner." *Id*. Analysis of the cases delineating the types of contracts that fall within the designation "personal" is of scant assistance to our inquiry. For example, bills of lading have been held not to be personal contracts, *Earle & Stoddart, Inc. v. Ellerman's Wilson Line, Ltd*., 287 U.S. 420, 53 S.Ct. 200, 77 L.Ed. 403 (1932); Gilmore & Black, s 10-26 at 899. Charter parties,

>on the other hand, have been four times treated as personal contracts by the Supreme Court in denying limitation to vessel owners. Gilmore & Black, id.

*Signal Oil*, 654 F.2d at 1169.

Trail Marine's claims against TPIC are that 1) TPIC is liable for the total loss of the vessel; 2) TPIC failed to insure the vessel and to list Trail Marine as additional insured; and 3) TPIC failed to terminate the agreement pursuant to its terms and is therefore liable to pay the daily charter hire rate. (Rec. Doc. 1, ¶XVIII-XXIII). The Court finds that these three claims arise from a personal contract. Under the charter agreement, TPIC undertook personal obligations to 1) return the vessel in good condition (ordinary wear and tear expected) upon completion of the charter; 2) provide insurance and name Trail Marine as additional insured; and 3) to pay a day rate of $450, continuing until TPIC no longer had a need for the vessel. (Rec. Doc. 1-1). The charter agreement does not contemplate that these obligations would be delegated to a third party. Therefore, the charter agreement is a personal contract which falls beyond the scope of the limitation statute. This comports with jurisprudence which has found that charter agreements constitute personal contracts. See *Pendleton v. Benner Line,* 246 U.S. 353, 356–57, 38 S.Ct. 330, 331–32, 62 L.Ed. 770 (1918); *Kattelman v. Otis Eng'g Corp.,* 701 F.Supp. 560, 563 (E.D. La. 1988). Thus, Trail Marine was not obligated to join its breach of contract claims in the limitation proceedings.

10

TPIC argues that Trail Marine should have brought its claims in the limitation proceeding as a matter of judicial economy. Although the Court agrees that resolving Trail Marine's claims in the limitation proceedings could have been more efficient, the Court is unwilling to find that considerations of efficiency alone are sufficient to overcome application of the personal contract doctrine absent jurisprudential precedent.

### B. Whether Trail Marine's claims arise out of the same transaction or occurrence for purposes of *res judicata* and Rule 13 compulsory counterclaims.

Trail Marine contends that its claims for breach of the charter agreement do not arise out of the same transaction or occurrence adjudicated in the limitation proceedings, such that the fourth requirement of *res judicata* is not met. The Fifth Circuit "has adopted the Restatement (Second) of Judgment's transactional test with respect to this inquiry and requires that the two actions be based on the same 'nucleus of operative facts.'" *In re Ark-La-Tex Timber Co., Inc.,* 482 F.3d 319, 330 (5th Cir. 2007), citing *Eubanks v. F.D.I.C.,* 977 F.2d 166, 171 (5th Cir.1992). "[T]he application of res judicata has been limited to issues of fact or law necessary to the decision in the prior judgment." *Id.*, quoting *Rhoades v. Penfold,* 694 F.2d 1043, 1048 (5th Cir.1983). Determining whether the same nucleus of operative facts is present requires that the court analyze "the factual predicate of the claims asserted." *Id.*, citing *Eubanks, supra*.

TPIC argues Texas Marine's claims are also barred as forfeited compulsory counterclaims under Rule 13. In order to determine whether a claim is a compulsory counterclaim, the court must ask: (1) whether the issues of fact and law raised by the claim and counterclaim largely are the same; (2) whether *res judicata* would bar a subsequent suit on defendant's claim absent the compulsory counterclaim rule; (3) whether substantially the same evidence will support or refute plaintiff's claim as well as defendant's counterclaim; and (4) whether there is any logical relationship between the claim and the counterclaim. *Tank Insulation Int'l, Inc. v. Insultherm, Inc.*, 104 F.3d 83, 85–86 (5th Cir. 1997), citing *Plant v. Blazer Finan. Servs.,* 598 F.2d 1357, 1360 (5th Cir.1979)). "If *any* of these four questions results in an affirmative answer then the counterclaim is compulsory." *Id. (emphasis in original).* An action not precluded under the principle of *res judicata* likewise survives forfeiture as a compulsory counterclaim under F.R.C.P. Rule 13. *In re Ark-La-Tex*, 482 F.3d at 332.

The limitation proceedings adjudicated the claims arising from the losses from the October 2015 explosion, including two fatalities. Trail Marine argues that its claims for breach of contract arise from TPIC's failures to comply with its contractual obligations established in the bareboat charter agreement, and thus constitute a different transaction or occurrence. As Trail Marine states, it need only show the existence of a valid contract and that TPIC failed to comply with its

12

obligations therein. The facts underlying the incident have no bearing on the resolution of Trail Marine's breach of contract claims.

Contrarily, TPIC argues that Trail Marine's claims for breach of the charter agreement arise out of the same operative facts—the explosion resulting in the loss of the vessel, though Trail Marine's basis for recovery (contract) may be different than the bases of other claimants (tort). TPIC also relies on its defense to Trail Marine's claims that the *TM-3* was unseaworthy. TPIC argues that the vessel's unseaworthiness—an issue litigated in the limitation proceedings—renders the charter agreement unenforceable and thereby intertwines the limitation proceedings and Trail Marine's claims inseparably.

TPIC's argument seems easy to digest, but consideration of the personal contract doctrine complicates an otherwise simple resolution. As discussed above, the personal contract doctrine and interpreting jurisprudence dictate that contractual claims as between a vessel owner and a charterer are not constrained by the Limitation of Liability Act. Further, in relying on *Richardson*, the Supreme Court reasoned:

> The contract was between human beings and the petitioner [a shipowner] by his own act knowingly made himself a party to an express undertaking for the seaworthiness of the ship. That the statute does not limit liability for the personal acts of the owners done with knowledge is established by *Richardson v. Harmon*, 222 U. S. 96, 32 Sup. Ct. 27, 56 L. Ed. 110. It was said in that case, 222 U. S. 106, 32 Sup. Ct. 27, 56 L. ed. 110, that section 18 leaves the owner 'liable for his own fault, neglect and contracts.' The principle was held to apply

13

>to contracts less personal than this in *Great Lakes Towing Co. v. Mill Transportation Co.,* 155 Fed. 11, 83 C. C. A. 607, 22 L. R. A. (N. S.) 769, and in *The Loyal*, 204 Fed. 930, 123 C. C. A. 252. We are not disposed to disturb the very strong and deliberate intimations of *Richardson v. Harmon* in their application to the present case. **It is said that the owners did their best to make the vessel seaworthy and that if it was not so the failure was wholly without the privity or knowledge of the petitioner. But that is not the material question in the case of a warranty. Unless the petitioner can be discharged from his contract altogether he must answer for the breach whether he was to blame for it or not.**

*Pendleton v. Benner Line,* 246 U.S. at 356–57. (Emphasis added.)

*Pendleton* thus stands for the notion that claims arising under personal contracts are not subject to limitation, irrespective of unseaworthiness defenses. See also *W. R. Grace & Co. v. Charleston Lighterage & Transfer Co.,* 193 F.2d 539, 543 (4th Cir. 1952) holding that a charterer's damages for a vessel's unseaworthiness against the owner are not limited by the Limitation of Liability Act. See further *Baker v. Raymond Int'l, Inc.,* 656 F.2d 173, 184 (5th Cir. 1981) for a discussion of a seaman's right to recover "against the owner of an unseaworthy vessel, without regard to whether owner or bareboat charterer is responsible for the vessel's condition," though his recovery is "subject to the ceiling established by the Limitation Act." In short, although unseaworthiness may lead to capped exposure in limitation proceedings as between third persons and vessel owners/charters, unseaworthiness of a chartered vessel falls beyond the scope of the limitation act as between the vessel owner and charterer.

14

Without question, both the vessel owner (Trail Marine) and charterer (TPIC) could conceivably be found liable to the decedents for the vessel's unseaworthiness, subject to limits imposed by the Limitation Act. The question is then one of apportionment of fault for unseaworthiness (i.e. which elements of unseaworthiness are attributable to the owner as having existed at the inception of the charter or to the charterer as having developed after commencement of the charter). But these are questions to be adjudicated in the limitation proceedings. Claims between the owner and charterer are beyond that scope and, when governed by a contract, depend upon their personal obligations. Here, in considering whether TPIC breached the charter agreement, the trier of fact must determine whether TPIC breached the agreement by failing to return the vessel in good condition or by failing to name Trail Marine as additional insured. That the vessel was unseaworthy at the inception of the charter agreement is TPIC's defense that the contract is unenforceable or void. Though the factual predicate of unseaworthiness may be the same (i.e. what parts of the vessel were unseaworthy at what times), unseaworthiness is not the pertinent nucleus of operative facts in these proceedings. The nucleus of operative facts is the scope of the charter agreement and whether TPIC breached it. Unseaworthiness is merely a defense. Therefore, the Court is unwilling to find Trail Marine's breach of contract claims are barred by *res judicata* or were compulsory counterclaims in the limitation proceedings.

This holding is in accord with the finding that Trail Marine was not obligated to bring its contractual claims against TPIC in the limitation proceedings.

### III. Whether Trail Marine may recover the charter hire rate since the date of the vessel's loss.

Assuming Trail Marine's claims withstand as discussed above, TPIC argues that Trail Marine is not legally permitted to recover the $450 charter hire day rate since the vessel's total loss. In support of its position, TPIC relies on the total (or constructive total) loss rule, set forth by the Fifth Circuit as follows:

> When a vessel is damaged in a collision or other marine casualty, the amount of recovery depends on whether it is deemed a total (or constructive total) loss or whether its partial damage justifies repair. *See* 2 Thomas J. Schoenbaum, *Admiralty and Maritime Law* § 14-6, at 278 (1994). A vessel is considered a constructive total loss when the damage is repairable but the cost of repairs exceeds the fair market value of the vessel immediately before the casualty. *See Ryan Walsh Stevedoring Co. v. James Marine Services, Inc.,* 792 F.2d 489, 491 (5th Cir.1986). In such a case repair is not economically practicable, and the market value of the vessel is the ceiling of recovery. *See Pizani,* 669 F.2d at 1088; *O'Brien Bros. v. The Helen B. Moran,* 160 F.2d 502, 505 (2d Cir.1947). Damages for loss of use may not be awarded when the vessel is a constructive total loss. *Ryan Walsh Stevedoring,* 792 F.2d at 491. When a damaged vessel is not a total loss, the owner is entitled to recover the reasonable cost of repairs necessary to restore it to its precasualty condition. *See The Tug June S v. Bordagain Shipping Co.,* 418 F.2d 306, 307 (5th Cir.1969) (citing *The \*636 Baltimore,* 8 Wall. 377, 75 U.S. 377, 19 L.Ed. 463 (1869)).

*Gaines Towing & Transp., Inc. v. Atlantia Tanker Corp.,* 191 F.3d 633, 635–36 (5th Cir. 1999). See also *E.I. DuPont de Nemours & Co. v. Robin Hood Shifting & Fleeting Serv., Inc.,* 899 F.2d 377, 379 (5th Cir. 1990), citing *King Fisher Marine*

*Serv., Inc. v. NP Sunbonnet,* 724 F.2d 1181 (5th Cir.), *reh'g denied with opinion,* 727 F.2d 315 (1984), ("[C]ourts have long held that where a vessel is a total loss the measure of damages is the market value at the time of loss.")

*Cashman Equip. Corp. v. Rozel Operating Co*. is factually on point. In that case, the Middle District Court of Louisiana found that a vessel owner was not entitled to recover for lost charter hire after the date of the vessel's constructive total loss. *Cashman Equip. Corp. v. Rozel Operating Co.,* No. CIV.A. 08-363, 2013 WL 3759709, at *5 (M.D. La. July 15, 2013), *aff'd,* 569 F. App'x 283 (5th Cir. 2014). To the extent *Cashman* has been found to apply only to cases in which the contract explicitly obligated the charter to pay charter hire until the vessel was declared a constructive total loss (see *Crowley Marine Servs., Inc. v. Vigor Marine LLC,* 17 F. Supp. 3d 1091, 1096 (W.D. Wash. 2014)), the Court disregards that finding as incorrect. Review of the charter agreement at issue in *Cashman* (available at *Cashman Equip. Corp. v. Rozel Operating Co*., M.D.La. No. 08-cv-00363, Doc. 16-3) confirms that contract did not contain any such statement. Rather, as in this case, the charter agreement obligated the charter to pay a day rate for the length of its term and/or until the vessel was returned in the same good seaworthy condition. The owner was not entitled to recover charter hire after the vessel was deemed a total loss. *Cashman*, at *5.

17

Trail Marine attempts to distinguish the above cited cases based on the classification of damages sought. Trail Marine argues that the contractually agreed upon hire rate of $450 per day is conceptually distinct from loss of use damages; however, this does not overcome the constructive total loss rule which unequivocally limits recovery to the market value of the vessel at the time of the loss. Accordingly, the Court finds that Trail Marine has not stated a claim for recovery of lost charter hire.

## Conclusion

For the reasons discussed herein, the Court recommends that Texas Petroleum Investment Company's Motion to Dismiss (Rec. Doc. 7) be GRANTED IN PART AND DENIED IN PART. The Motion should be granted insofar as it seeks to dismiss Trail Marine's claims for charter hire after the vessel's total loss. The motion should be denied in all other respects.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from service of this report and recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen days after being served with of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error. See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. §636(b)(1).

THUS DONE in Chambers, Lafayette, Louisiana on this 28th day of October, 2022.

_____
CAROL B. WHITEHURST
UNITED STATES MAGISTRATE JUDGE